## UNITED STATES DISTRICT COURT

Case No._____ –

Kenneth Carl Guy   ,

    Plaintiff (s)

vs.

State of Florida,
Plaza Home Mortgage,

    Defendant (s)

FILED BY___*PG*___D.C.

JAN 1 4 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## Initial Complaint and Emergency Request For Preliminary Injuction

I, Kenneth Carl Guy, Plaintiff, in the above styled cause, sue defendants(s): Plaza Home Mortgage and The State of Florida.

This action filed under 28 U.S.C. § 1331.

## Jurisdiction

1)     This is a complaint filed under the Federal Question Jurisdiction. 28 U.S.C. § 1331 states that, "The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## Venue

2)     28 U.S. Code § 1391 states that a venue is proper in, "a judicial district in which any defendant resides" as such, this venue is proper.

## Parties

**Plaza Home Mortgage** - Mortgage Company Who Engaged In Mortgage Fraud against the Plaintiff.

**The State of Florida** – Responsible for the suppression and spoliation of the record in CACE-16022826.

**ARTAU, HON. EDWARD L.,
LAZARUS, HON. JOEL T,
Clerk of Courts in Broward County Courthouse,
Clerk of Courts in Florida's 4th District Court of Appeals,
Clerk of Courts in Florida's Supreme Court,**

## Statements of Facts

3) On 4/30/14 the Plaintiff purchased a condo at 3109 Oakland Shores Dr., G-108 in Oakland Park, FL, 33309.

4) When the Plaintiff purchased this property, he was handed one set of mortgage documents, with a sale price of the property at $79,000, and a completely different set of documents, reflecting a different sale price of $75,500 for the property were filed with the Broward County Record in Broward County Florida reflecting a different sale price (see exhibit 'BF').

5) Within only a week and a half after the purchase of the condo, the Plaintiff experienced a break-in. What he didn't know then, is that the criminals who broke into his condo were attempting to swap the $79,000 mortgage documents back to the $75,000. The Plaintiff discovered this break-in.

6) The Plaintiff, contacted his new Community Association Manager to inform her of the break-in. What the Plaintiff did not know at the time is that one of the main criminals responsible for this mortgage fraud scheme was his new community manager,

Rosemarie Demalleo Mauck.

7)      The Plaintiff's new Community Association Manager instructed the Plaintiff that these break-ins were a known problem in the community, that an investigation was ongoing, at that he was not to inform anyone else in the condo association about the break-in because it would disrupt an ongoing investigation.

8)      While this explanation seemed on, the Plaintiff, new to the community honored this request. Unfortunately, in order to get away with the mortgage fraud she was in-part responsible for, the Community Association Manager immediately began a campaign of character assassination so that when the Plaintiff actually realized he was "dupped" by the request to remain silent, it would be too late because the Community Association Manager would have already informed everyone that she could that the Plaintiff was "crazy" in order to discredit the Plaintiff when and if he attempted to inform other members of the association about the mortgage fraud scheme.

9)      Fearing discovery of the mortgage fraud, in order to get the Plaintiff to move out of the association and to artificially cause the Plaintiff's property to go into foreclosure, the Community Association Manager contacted the Plaintiff's employer in an attempt to get him fired.

10)     It is unclear how exactly the Plaintiff's employer found out that the Plaintiff was a person living with the human immunodeficiency virus. The Plaintiff's Community Association Manager could have informed his employer based on the first break-in and many break-ins after the first where it was discovered that the Plaintiff, fearing discovery of his medical situation and even too fearful to throw his empty pill bottles in the garbage for fear of discovery by his neighbors amassed a drawer full of empty HIV medication bottles, the Plaintiff's employer could have found out when his car was

broken into multiple times while the Plaintiff was at work where he kept back-up bottles of his HIV medication in his car and heard managers at his work talking about what the Plaintiff had in his care, or if it was discovered when the Plaintiff applied for health care through his employer. The exact reason does not matter, the disclosure to everyone in his condo complex and at the Plaintiff's place of employment does matter.

11)     Clearly fearing a discrimination law suit, the Association and Newsmax Media Inc. devised a plan to fire and evict the Plaintiff. A Faustian bargain was struck between the Plaintiff's employer at the time, Newsmax Media Inc. and the Plaintiff's Community Association Manager (and therefore, the Plaintiff's Community Association, Oakland Shores Condominium Inc., (referred to following this reference as the "Association")) that if the Association Manager helped get the Plaintiff fired from his job, his job would help the Association get rid of the Plaintiff from the Association.

12)     The Association took many illegal acts of harassment, including but not limited to, parking the Plaintiff in to his own parking spot in order to make him late for work, and assisting his employer in copying the hard drives of all of his computers as well as assisting in installing "Rootkits" (wire-tap like software) on all of his computers as well as Flexispy, spyphone (wire-tap like) software on the Plaintiff's smartphone.

13)     Only after the Plaintiff left Newsmax Media Inc. he discovered this Faustian bargain between his former employer and the Association, the existence of this Faustian bargain when put the comment that CEO of Newsmax Media Inc. said into context when he said that, "Under no circumstance is K.C.'s law suit to see the light of any court room". This comment foreshadowed the legal strategies that the Plaintiff would be subjected to from the window of time when the Plaintiff was an employee at Newsmax Media Inc. in 2014 to the present day, 2019.

14)    The counts in this complaint detail many acts of both extrinsic and intrinsic fraud upon the court. One specific, pervasive, and determinative method of fraud that has been executed on the Plaintiff was executed with the motive to con employees of the State of Florida to assist in committing acts to keep the Plaintiff from any means or ability to litigate.

15)    It is axiomatic that when committing a crime against someone, to get away with those crimes (if and when discovered) might commit acts that would frame the crime victim. This is exactly what the Plaintiff has experienced.

16)    It should be noted that the CEO of Newsmax Media Inc, Chris Ruddy became a famous journalist writing about Criminal Conspiracies. The collective acts described in this complaint amount to a real life conspiracy involving organized crime, funded by Chris Ruddy. Instead of legally and privately settling with the Plaintiff, the CEO of Newsmax Media decided on a different legal strategy; he decided to fund his own real-life criminal conspiracy. To create a situation that would compel the clerk of courts in any courthouse to bar access to the courts to the Plaintiff, Chris Ruddy hired private investigators who have offer illegal incentives to people the Petitioner interacted (and interacts with) with the intent of illegally framing the Plaintiff, creating a fabricated Criminal Investigation that has gone on for years.

17)    When an employment law case is so wrong, so expensive if justly settled, it seems to be the cheaper route to hire people to make false statements, to frame the Petitioner, and even execute acts to paint the Plaintiff in a false light to law enforcement so that they would never investigate the many crimes that were executed and continue to be executed against the Plaintiff.

18)    After leaving Newsmax, the Plaintiff was unable to find any employment at

Page 5 of 44

all. Using the illegal wiretaps placed on the Plaintiff's computers and smartphone, someone was contacting companies that he applied at in order to keep the Plaintiff unemployed. Unable to work, the Plaintiff sought legal help. The Plaintiff later discovered that someone was also contacting law firms after the Plaintiff would contact them convincing them not to take his case, explaining to those law firms that the Plaintiff was really under a criminal investigation and that he was only seeking to manipulate the resources of the law firm to disrupt an ongoing criminal investigation.

19)   Blocked from employment or legal assistance, the Plaintiff wrote several legal complaints on his personal computers that were tapped/hacked, only to have those complaints deleted and/or altered as well as the exhibits that were cited within those complaints deleted and/or altered.

20)   While the Plaintiff did not know it at the time, the Plaintiff slowly began to catch on to the fact that, using the illegal wiretap software placed on the Plaintiff's smartphone, the Plaintiff's Community Association Manager would, with the money of Newsmax Media Inc., hire people to interact with the Plaintiff, and then after interacting with the Plaintiff make and take false police reports.

21)   Additionally, as the Plaintiff would gather evidence of the illegal wiretaps placed on the Plaintiff's computers and smartphone, using the knowledge gained from the illegal wiretaps, the criminal neighbors would make fabricated calls to 911, in acts that the Plaintiff now knows to properly label as Malicious Prosecution and Abuse of Process so that when the Plaintiff did take the evidence into his local police department, they would immediately send him away.

22)   This Faustian bargain executed many strategies to con employees of the State of Florida to allow them to get away with the crimes they committed against the

Plaintiff. For example, once they paid someone to drug the Plaintiff without his prior knowledge or consent, offer to drive me home only to dump him in the street at a specific predetermined block half a quarter mile from his home where someone was waiting for the Plaintiff to get out of the car. This person immediately screamed that the Plaintiff had a gun and instantly called 911. Just prior to this incident on that same night with the same person, the Plaintiff was trapped in a room and without my knowledge someone come over to do a prearranged buy of narcotics, how much and what exactly the Plaintiff didn't see, specifically though, the Plaintiff did know that they would not let the Plaintiff leave the room when he ascertained that they were engaging in or about to engage in illegal activity. After this person left that location, right outside the door, someone took a statement as per law enforcement protocol, "yes kc was in there, yes kc sold this to me" "thank you, we've been after him for a long time now".

23)     The combination of the fabricated control buy and dumping the Plaintiff in the street close to his home had one clear motive, provide law enforcement the opportunity to enter the Plaintiff's home without a warrant.

24)     Already knowing that the criminals responsible for creating this scenario had been breaking into his condo, the Plaintiff naturally concluded that the criminals harassing him and framing him more than likely planted something in the Plaintiff's home in order for the fabricated scenario to allow law enforcement to legally bypass the need for a warrant to make any sense whatsoever.

25)     Unfortunately, this is only one example of, in over the last five years, over one hundred examples.

26)     On many occasions in the five years that the Plaintiff has had his smartphone and computers illegally hacked, and the Plaintiff has found himself digitally

stalked, he has been subjected to a legal strategy unlike any other he has ever been able to find in all of American Jurisprudence, the Plaintiff's former employer funded, and executed on many occasions, not just drugging the Plaintiff without his prior knowledge or consent, the criminals who commissioned and executed these crimes also gave an extra $1,000 as a bonus if the criminals hired succeeded in drugging the Plaintiff enough so that he would miss work. It's axiomatic that intentionally overdosing someone carries with it the very real possibility that the victim of that crime could have died, and to be clear, so many times over during matters related to this case, the Plaintiff has in fact almost died.

27)     Crimes such as the Plaintiff has described herein, without the help of law enforcement, would require going into discovery to prove, and so, every measure possible has been executed to keep the Plaintiff from discovery.

28)     While the Plaintiff, a mortgage fraud, a victim of organized crime, and a victim of a megalomaniac employer heartlessly commissioning countless crimes against the Plaintiff would stop at nothing to keep the Plaintiff from discovery have spared no expense to keep from discovery and from being discovered.

29)     In order to keep out of discovery, during the course of proceedings in CACE-16-022826, an attempt to frame the Plaintiff for a 1st degree felony was executed against the Plaintiff. Thankfully, the Plaintiff caught this frame-job, and recorded this proof in a "Fraud Upon the Court" motion in CACE-16-022826 and the exhibits attached to that motion. Unfortunately, because the mortgage fraud criminals had already on many occasions attempted to frame the Plaintiff, law enforcement in Broward County, frustrated that they had been unable to arrest the Plaintiff (for crimes he had never committed in the first place) participated in the 1st degree felony frame job and

subsequent cover-up; all of this because the Plaintiff was a mortgage fraud victim and a person of who his former employer would not allow to rightfully bring a legal discrimination complaint against.

30)   Even though two separate mortgage documents existed and were entered into evidence in CACE-16-022826, the Plaintiff was unable to pass the summary judgement hearing in CACE-16-022826. The criminals responsible for the mortgage fraud in the first place "profited" from their crimes against the Plaintiff, and so the Plaintiff was kept out of discovery in CACE-16-022826.

31)   As anyone would do, the Plaintiff filed a Notice of Appeal in CACE-16-022826, and 4D17-3335 was created. Adamant to keep the Plaintiff out of discovery, because the mortgage fraud criminals responsible would, by their own admission, go to prison for life if discovered (or if discovery was allowed), also now were able to call on resources within the Broward Sheriff's Office to cover-up the attempted 1st degree felony frame job that they too participated in.

32)   The record in CACE-16-022826 was altered almost in its entirety after the case was disposed in order to keep the Plaintiff from discovery (and the criminals responsible for being discovered). In response to the completely altered record, during the proceedings in 4D17-3335 the Plaintiff filed a "Motion To Correct The Record" where he proved that the record had been thoroughly altered, and in response to that motion, the Plaintiff was ordered not to raise the issue of the altered record again. After the Plaintiff was ordered not to raise the issue of the altered record in the middle of proceedings in 4D17-3335, the record was once again altered. Having no choice, the Plaintiff brought this new round of alterations of the record to the attention of the 4th District Court of Appeals, and in reaction to the Plaintiff not following the previous order

the case was immediately closed through a Per Curiam Affirmed disposition.

33)    The "political capital" that was earned by the mortgage fraud criminals executed against the Plaintiff before he even came into court in CACE-16-022826 allowed the criminals to evade discovery and being discovered for their crimes. The relentless character assassination allowed the criminals responsible to con officers of the court in all three tiers of the court system in the State of Florida.

34)    The Plaintiff in no way believes it would be ethical to ask for a dime from any member of the state acting in their official capacity or not for falling victim for the criminal legal strategies of a private employer and a group of mortgage fraud criminals, but without help from this Court, without this Court at least invoking the interim presumption that the Plaintiff is telling the truth (and supported by the evidence included within this complaint), then there exists a perfect (illegal) legal strategy where civil rights become dead and organized crime, unknowingly supported by law enforcement, becomes free to prosper and spread like a cancer within our society.

35)    The Plaintiff's true prayer for relief is that the nightmare described herein never be allowed to be set in any Mandate in 4D17-3335 as it is now.

36)    Illegally cut off from working, cut off from law enforcement, cut off from obtaining a lawyer, and cut off from the courts, the Plaintiff, much like Pandora in Greek mythology after she released all the evils on the world, like the criminals who have victimized the Plaintiff released so many evils on the Plaintiff, Pandora was left with one thing in Pandora's Box, the only thing that the Plaintiff also has left, hope; hope that the Plaintiff's rights as guaranteed by the United States Constitution are not foreclosed to the Plaintiff and hope that this court will not allow organized crime to prosper in South Florida, or anywhere, and that law enforcement will "wake up" and not allow organized

crime to prosper and proliferate in South Florida (or anywhere).

## Trial by Jury

37) Fed. R. Civ. P. Rule 38(b) states that, "A party may demand a jury trial by ... a written demand --- which may be included in a pleading".

38) In accordance with the Rule 38 - "Right to a Jury Trial; Demand" in the Federal Rules of Civil Procedure, the Plaintiff demands that a trial by jury be granted in determining the causes of action included in this complaint.

## Claims

### COUNT I
(42 U.S.C. § 1983, U.S. Const. amend. XIV, 18 U.S.C. § 1506)

ARTAU, HON. EDWARD L.,
in their official capacity:

1. **In Guy v. Plaza Home Mortgage, Inc., Case No. 4D17-3335 (Fla. 4th DCA Apr. 25, 2018), when the State of Florida decided to not enforce 18 U.S.C. § 1506 to the detriment of the Appellant, did the State of Florida decide that the Appellant would not receive equal protection of the law and as a result invalidate the Supremacy Clause of the United States Constitution (Art. VI, cl. 2, U.S. Const.) as well as Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws"?**

39) Exhibit 'AA' and exhibit 'AB' show two different dates for the exact same hearing. One exhibit has a hearing recorded on 6/22/17 while the other exhibit has the exact same hearing set for 6/21/17.

40) The Trial Court's Foreclosure Instructions (exhibit 'AC') states:

" Uniform Motion Calendar (UMC) Hearings and Case Management Conferences (CMC) are set for Monday – Wednesday."

41)   The Hearing on the altered judges order in question did not happen on 6/22/17 because 6/22/17 was a Thursday.

42)   Exhibit 'AD' is the Defendant's 3/12/18 Response to the Plaintiff's 1/9/18 Motion to Correct the Record. In that Response the Defendant certified that the hearing for the Motion to Add Missing Third Parties was on 6/21/17.

43)   Attachment three of exhibit 'AE', the Broward County Clerk of Courts provided evidence that the Motion to Add Missing Third Parties was scheduled on 6/21/17.

44)   Exhibits 'AA' and 'AB' declare that the same hearing was held on two different days. The record as it currently stands in 4D17-3335 states that the hearing in question was on 6/22/18 as exhibit 'AB' declares. However, exhibits 'AA', 'AC', 'AD', and 'AE' all support the fact that the hearing in question was held on 6/21/18. If it is decided by this court that the hearing in question happened on 6/21/18 and exhibits 'AA' is the authentic document, then an alteration of the record on appeal did occur in 4D17-3335 which is a crime under 18 U.S.C. § 1506.

## COUNT II
(Fla. R. Civ. P. 1.545, Fla. Const. Art. I, § II, 42 U.S.C. § 1983, U.S. Const. amend. XIV, § 1, U.S. Const. amend. V.)

ARTAU, HON. EDWARD L.,
In his official capacity

**2. In Guy v. Plaza Home Mortgage, Inc., Case No. 4D17-3335 (Fla. 4th DCA Apr. 25, 2018), when the State of Florida decided to not enforce Fla. R. Civ. P. 1.545 to the detriment of the Appellant, did the State of Florida decide that the Appellant would not receive equal protection of the law and as a result invalidate, Bank of Nova Scotia v. United States, 487 U.S. 250 (1988) where it was decided that, "A court should rely on rules, and not inherent powers, whenever possible" as well as , Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal**

**protection of the laws" as well as Art. I, § 2, Fla. Const. which states "All natural persons, female and male alike, are equal before the law"?**

45)     The Fla. R. Civ. P. 1.545 states that:

"A final disposition form (form 1.998) must be filed with the clerk by the prevailing party at the time of the filing of the order or judgment which disposes of the action."

46)     The 4/25/18 partial final judgment order in 4D17-3335 contains an opinion of Florida's 4th District Court of Appeals (see exhibit 'AF'). It is held in that opinion that the Clerk of the lower-court did not follow Fla. R. Civ. P. 1.545 because the opinion cites a response of the Broward County Clerk of Courts where the clerk admits that the final disposition form (see exhibit 'AX') and the final judgment form (see exhibit 'AY') were not filed at the same time as required by Fla. R. Civ. P. 1.545.

47)     The 14th Amendment of the United States Constitution states (in part):

"No State shall ... deny to any person within its jurisdiction the equal protection of the laws."

48)     When State of Florida decided not to enforce Fla. R. Civ. P. 1.545 to the detriment of the Plaintiff the Plaintiff's rights under the Equal Protection clause of the14th Amendment of the United States Constitution was invalidated.

49)     The Plaintiff hopes that this court determines that the Plaintiff's rights under the 14th Amendment of the United States Constitution were invalidated and that this Court issues the orders necessary to cure this Constitutional invalidation.

### COUNT III
(42 U.S.C. § 1983,  U.S. Const. amend. XIV,  42 U.S. Code § 12132)

LAZARUS, HON. JOEL T.,
in their official capacity:

**3. In Guy v. Plaza Home Mortgage, Inc., Case No. 4D17-3335 (Fla. 4th DCA Apr. 25, 2018), when the courts in the State of Florida denied Guy (a person living with a disability covered by 42 USC § 12132) equal access to the courts and**

equal rights in the courts, did the State of Florida allow Guy to sue the State of Florida because  42 USC § 12132 states "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter"?

50)   The facts as stated in Count I are reaffirmed here in Count III.

### COUNT IV
(42 U.S.C. § 1983, U.S. Const. amend. XIV, 18 U.S.C § ~~1621~~ 1506)

Keith Manson,
Plaza's VP of Operation Committed Perjury

**4. In Guy v. Plaza Home Mortgage, Inc., Case No. 4D17-3335, did the crime as described in 18 U.S.C. § 1506 occur, did Plaza Home Mortgage participate in that crime giving them unclean hands and as decided in Keystone Bituminous Coal Ass'n v. Debenedictis, 480 U.S. 470, Plaza should not be afforded any equity at all because it was decided in that case that, "He who comes into equity must come with clean hands" and therefore the mandate in 4D17-3335 should be repealed and Plaza's claims dismissed with prejudice?**

51)   The itemized late fees provided by the Defendant in the 4/24/17 "Motion For Summary Judgment" (see Exhibit ~~'AG'~~ 'BE') are separated by date and month for each nonpayment.

52)   Exhibit ~~'AG'~~ 'AH' states that the mortgage payments were missed in January, February, and March of 2016.

53)   After March of 2016, the evidence reflects an attempt at a repayment plan of two months of payments by the 15th of each month for the next three months, including; April, May, and June of 2016.

54)   The repayment dates and exact amounts repaid are itemized in Exhibit 'AH'. The late charges in Exhibit 'AG' match the itemized repayments/nonpayments listed in Exhibit 'AH'. Exhibit 'AI' and Exhibit 'AG' exactly match the itemized late fees in the Summary Judgment evidence, Exhibit 'AG'.

55)    The "Notice of Default and Cure Letter" (Exhibit 'AJ') that is included as evidence in the original Complaint filed by the Defendant cannot exist together with the itemized late charges listed in Exhibit 'AG' (evidence also submitted by the Defendant) without one of the two documents existing as a fraudulent document.

56)    In the "Notice of Default and Cure Letter" (Exhibit 'AJ'), the letter writes:

"The nature of your default is the failure to make the monthly mortgage payment(s) from May 01, 2016 to June 01, 2016."

57)    Exhibit 'AG', listing the itemized late charges, does not have a late charge for May, 2016 and June, 2016. However, Exhibit 'AJ' claims that the Plaintiff was late in the mortgage payments for May and June of 2016. If this claim were true, both May and June of 2016 should have a late charge and these late charges should be listed in Exhibit 'AG' but they are not. The repayment plan referenced in exhibit 'AI' required double monthly payments for three months beginning in April 2016, those double monthly repayments are reflected in exhibit 'AF' and because these payments were timely made, a late charge for months are not reflected in exhibit 'AE'. Consequently the late payment claims referenced in evidence provided with the original complaint, the "Notice of Default and Cure Letter" (Exhibit 'AJ') are fraudulent claims, and as a result the "Notice of Default and Cure Letter" (Exhibit 'AJ') included in the original complaint is nothing less than a fraudulent document.

58)    Exhibit 'AI' is the real letter that the Appellant received from Plaza dated June 28, 2016. Exhibit 'AI' matches the evidence currently in the Record On Appeal while Exhibit 'AJ', the "Notice of Default and Cure Letter" included in the initial Complaint, as the record in 4D17-3335 now stands, can only be explained when examined with the additional evidence included in this count as a fraudulent document.

59)    Page eight of the initial Complaint contains an affidavit of Plaza's Vice President, Keith Manson, under penalty of perjury, purporting the document's in the initial Complaint (see Exhibit 'AK') to be authentic.

60)    The evidence provided in this count proves that evidence in the initial complaint is/are not authentic. Consequently, when Plaza's Vice President, Keith Manson, referenced the original complaint in exhibit 'AK' and declared that "the claims asserted therin are valid and proper and the facts alleged therein are true and correct ", without question, Plaza's Vice President, Keith Manson committed perjury.


## COUNT V
(42 U.S.C. § 1983, U.S. Const. amend. XIV, 18 U.S.C. § 1503)

Unknown Clerk at Florida's 4th District Court of Appeals,
in their official capacity:

**5. Is the act of hiding 4D18-2315, as proven in the included youtube.com video links in this petition a federal crime, specifically, 18 U.S.C. §1503, and to not enforce this crime would invalidate the United States Constitution, specifically, Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this federal crime be repealed?**

61)    In 4D17-3335, on 8/10/18, the Petitioner filed a, "Notice of Filing Notice of Removal To United States District Court" which cited 28 U.S.C. § 1446(e) which stated that a state court "shall effect the removal and the State court shall proceed no further unless and until the case is remanded."

62)    On 8/15/18, a decision was rendered on the Plaintiff's 8/10/18 Removal to a United States District Court (see exhibit 'AL').

63)    In the 8/15/18 order from the Southern District of Florida, it is stated that "a

case that has been fully litigated without a basis for federal subject matter jurisdiction having arisen in an amended pleading in the last 30 days --- cannot be removed to federal court."

64)     During the five days that 4D17-3335 was removed to the federal jurisdiction in the Southern District of Florida, the case was evaluated for removal to the Federal Jurisdiction.

65)     In the 8/15/18 order from the Southern District of Florida, it is stated that "a case that has been fully litigated without a basis for federal subject matter jurisdiction having arisen in an amended pleading in the last 30 days --- cannot be removed to federal court."

66)     While the case was evaluated for removal in the federal Court, a pleading filed within 30 days of the removal that would have formed a basis for federal subject matter jurisdiction was removed from a federal judge's ability to evaluate in the consideration for removal. Proof of this can been seen in the following videos.

1.  https://youtu.be/YtKswjZ4EEM - Proof of the removal of 4D18-2315 (Video Taken on 8/14/18)

2.  https://youtu.be/KGIG8IaOn7s - Proof of the restoration of 4D18-2315 (Video Taken on 8/15/18)

67)     4D18-2315 was only restored in eDCA after the case was remanded back to the State of Florida.

68)     18 U.S.C. § 1503 provides:

"Whoever … corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be (guilty of an offense)."

69)     As 18 U.S.C. § 1503 is defined and when combined with the evidence in

this count, the Plaintiff believes that the crime of the Omnibuis Provision of Federal

Obstruction of Justice has been committed to obstruct matters related to this case.

## COUNT VI
### (18 U.S.C. § 1506, 42 U.S.C. § 1983, U.S. Const. amend. XIV, § 1, U.S. Const. amend. V.)

Unknown Clerk at the Broward County Clerk of Courts,
in their official capacity:

**6. No legitimate proof exists as to the serving of the initial complaint on the Defendant in CACE-16-022826, and would not allowing any mandate to be set invalidate the due process clause of the United States Constitution, Amend. XIV, § 1, U.S. Const. where it states that, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law".**

70)    During litigation of 4D17-3335, the Plaintiff introduced evidence that

proved that the record had been altered after final judgement was decided in the case

that the appeal, 4D17-3335, was based on. In an explanation to the Court of the date

time inconsistency, the Defendant, Plaza, in their 3/12/18 response in 4DCA17-3335

explained that if a document is altered in the record, the date can be altered by a clerk

of courts, but the filing time of the new version of that document reflects the time that the

new version of that document was filed (see exhibit 'AR').

71)    Along with the Proof of Service document allegedly served on the Plaintiff

that is on record in CACE-16-022826 with a "12/14/16 1:30:29 PM" date time stamp

(see exhibit 'AS'). The document filed at the same time as the Plaintiff's Proof of Service

document titled, "The Initial Complaint Served on Unknown Spouse of Kenneth C. Guy"

also contains a "12/14/16 1:30:29 PM" date time stamp (see exhibit 'AT'). Filed at the

exact same time as exhibit 'AS' and exhibit 'AT' is a document titled, "The Initial

Complaint Served on Unknown Tenant" which also contains a "12/14/16 1:30:29 PM"

date time stamp (see exhibit 'AU').

72)     The Proof of Service documents, exhibits 'AS', 'AT', and 'AU' also contain a 12/20/16 date stamp, along with a seal of the court, from the Broward County Clerk of Courts.

73)     Holding the explanation that document dates can be rolled back in time but that document times reflect the actual time of scanning provided by the Broward County Clerk of Courts and the Defendant, Plaza, to be true, all three documents containing the same time-stamp, "1:30:29 PM", exhibit 'AS', 'AT', or 'AU', could have had their date's rolled back in time at the exact same time when each of the proof of service  documents received the 12/20/16 date stamp (along with a seal of the court).

74)     This explanation would make sense, but for the fact that the date and time stamp of the initial complaint (see exhibit 'AV') and the certification of the original promissory Note (see exhibit 'AW') also have a date and time stamp of "12/14/16 1:30:29 PM" proving that either the explanation that Plaza and the Broward County Clerk of Courts gave in exhibit 'AR' was a lie and that the exhibits in that explanation were altered after the case was disposed, or that exhibits 'AS', 'AT', 'AU', 'AV', and 'AW' were altered after the case was disposed. Both possibilities cannot, however, exist together.

75)     As such, the proof of service that currently exists in the record, as provided in the evidence in this count is clearly a fraudulent document, and the Plaintiff believes it right that all orders issued against the Plaintiff be vacated because no legitimate proof of service exists in the record.


**COUNT VII**
(18 U.S.C. § 1017, 42 U.S.C. § 1983, U.S. Const. amend. XIV, § 1, U.S. Const. amend. V.)

LAZARUS, HON. JOEL T.,
in their official capacity:

**7. The federal crime, 18 U.S.C. § 1017, currently exists in the record for CACE-16-022826 and 4D17-3335; wouldn't not enforcing this crime invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this federal crime be repealed?**

76)     The facts presented in count VI of this complaint are re-alleged here-in for this count as well.

77)     The explanation of the alteration in the record provided by Plaza and the Broward County Clerk of Courts in exhibit 'AR' is either a complete lie and those exhibits that exhibit 'AR' references in Count II of this complaint (exhibit 'AX' and exhibit 'AY') are fabricated documents inserted into the record after the case was disposed, or exhibits 'AS', 'AT', 'AU', 'AV', and 'AW' are collectively fabricated documents inserted into the record after the case was disposed (and the seal of the court in exhibits 'AS', 'AT', and 'AU' are also fraudulently affixed to those exhibits).

78)     Regardless of fact if the first or second group of possibly fabricated documents is the legitimate collection of documents (assuming that one of the two groups of documents is legitimate in the first place), at least one of the two groups of documents has to be a fraudulent collection of documents inserted in the record after the case was disposed, and therefore, beyond any shadow of any doubt, the seal of the court affixed at the end of the record (see exhibit 'AZ') is a fraudulently affixed seal.

**COUNT VIII**
**(18 U.S.C. § 1017, 42 U.S.C. § 1983: DUE PROCESS, U.S. Const. amend. XIV, § 1, U.S. Const. amend. V.)**

Unknown Clerk at the Broward County Clerk of Courts,

in their official capacity:

**8. The federal crime, 18 U.S.C. § 1621, occurred in CACE-16-022826 by Plaza Home Mortgage's VP of Operations; wouldn't not enforcing this crime invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this federal crime be repealed?**

79)    18 U.S.C. 1621 states:

"(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any writen testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true;
or
(2) n any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both"

80)    The facts contained in COUNT IV of this complaint are re-alleged here in this count.

**COUNT IX**
(18 U.S.C. § 1847, 42 U.S.C. § 1983, U.S. Const. amend. XIV, § 1, U.S. Const. amend. V.)
~~1847~~ 1506

ARTAU, HON. EDWARD L.,
in their official capacity:

**9. The federal crime, 18 U.S.C. § 1506, occurred in 4D17-3335 covering up the fact that the Appellant/Petitioner was denied his rights under Fla. R. Civ. P. 1.180 to add 3rd parties in the time allowed by the Florida Rules of Civil Procedure and therefore invalidate Fla. R. Civ. P. 1.010 which states "These rules apply to all actions of a civil nature" and to allow any state mandate to be issued that invalidates this crime invalidates Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this federal crime be repealed?**

81)    18 U.S.C. § 1506 states that,

"Whoever feloniously steals, takes away, alters, falsifies, or otherwise avoids, any record, writ, process, or other proceeding, in any court of the United States, whereby any judgment is reversed, made void, or does not take effect;
...
Shall be fined under this title or imprisoned not more than five years, or both."

82)   The facts contained in COUNT I of this complaint are re-alleged here in this count.

**COUNT X**
(42 U.S.C. § 1983, 42 U.S.C. § 1983, U.S. Const. amend. XIV)

ARTAU, HON. EDWARD L.,
in their official capacity:

**10. It was decided in Mooney v. Holohan, 294 U.S. 103 (1935) that when, "evidence was concealed or suppressed; that the fraud in such a case was not such fraud as was "extrinsic to the record" and that it was only in cases of extrinsic fraud that the relief sought could be had"; didn't extrinsic fraud upon the court occur in matters related to CACE-16-022826, and shouldn't relief be granted?**

83)   The evidence contained in this complaint shows evidence of the alteration of the record in CACE-16-022826. An alteration is not the result of evidence that was concealed or suppressed, the evidence contained in this complaint supports the fact that evidence in the record was altered and removed from the case after final judgment was decided.

**COUNT XI**
(§ 877.10(1), Fla. Stat. (2018), Amend. XIV, § 1, U.S. Const.)

ARTAU, HON. EDWARD L.,
in their official capacity:

**11. Doesn't the opinion in 4D17-3335 not enforce Fla. § 877.10(1),**

**wouldn't allowing a written opinion that allows for this crime invalidates Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this federal crime be repealed?**

84)     § 877.10(1), Fla. Stat. (2018) states;

"It is unlawful for any person to knowingly make, issue, deliver, or receive dual contracts for the purchase or sale of real property. Dual contracts, either written or oral, are two contracts concerning the same parcel or real property, one of which states the true and actual purchase price and one of which states a purchase price in excess of the true and actual purchase price and is used as an inducement for mortgage investors to make a loan commitment on such real property in reliance upon the stated inflated value."

85)     Exhibit 'AM' shows a screenshot of Instrument # 112259679 in the Broward County Record.

86)     Exhibit 'AM' shows two different values for the Warranty Deed for the same instrument, on the left of Exhibit 'AM' shows that the property sold for $75,500 and on the right of the exhibit 'AM' shows that the property sold for $79,000.

87)     Exhibit 'AM' shows proof that the Broward County Record was altered, however, the Broward County Record cannot be altered without a judges order, and therefore, the property in question in CACE-16-022826 contains evidence of mortgage fraud as described in § 877.10(1), Fla. Stat. (2018).

<u>**COUNT XII**</u>
(§ 454.23, Fla. Stat. (2018), Amend. XIV, § 1, U.S. Const., 42 U.S.C. § 1983)

Deputy Clerk of the Florida Supreme Court, Mark Clayton,
in his official capacity:

12. **The crime, § 454.23, Fla. Stat. (2018) occurred during the preceding in SC18-1481; wouldn't not enforcing this crime**

**invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this crime be repealed?**

88)    § 454.23, Fla. Stat. (2018) states;

"Any person not licensed or otherwise authorized to practice law in this state who practices law in this state or holds himself or herself out to the public as qualified to practice law in this state, or who willfully pretends to be, or willfully takes or uses any name, title, addition, or description implying that he or she is qualified, or recognized by law as qualified, to practice law in this state, commits a felony of the third degree."

89)    Exhibit 'AN' is a screenshot of the docket in SC18-1481 taken from the youtube.com video, https://youtu.be/ZTx-JwQIa-M,filmed on 10/22/18. Exhibit 'AN' does not contain the 10/15/18 Notice of Appeal.

90)    In contrast, Exhibit 'AO' is also a screenshot of the docket in SC18-1481 taken from the youtube.com video, https://youtu.be/3-nyrPltS50, filmed on 10/31/18. Exhibit 'AO' contains the 10/15/18 Notice of Appeal, returned to the docket.

91)    The internal operating procedures of the Florida Supreme Court, under (B)(1)(a) (see page 7 of exhibit 'AP') states, in part;

" When a party files a notice seeking to invoke discretionary review, the clerk's office determines whether the case is subject to administrative dismissal based on a lack of jurisdiction. If the clerk's office determines that the case is subject to administrative dismissal, the case is docketed and automatically dismissed. In such cases, no rehearing is allowed. The clerk's office will administratively dismiss those cases in which a party seeks discretionary review"

92)    While the Florida Supreme Court has granted authority to the clerk's office of the Florida Supreme Court to automatically dismiss cases filed as Notices of Appeal seeking the discretionary jurisdiction of the Florida Supreme Court that satisfy specific requirements, the clerk's office has never been granted any authority to dismiss cases

seeking the Mandatory Jurisdiction of the Florida Supreme Court.

93)     The 10/15/18 Notice of Appeal, seeking the Mandatory Jurisdiction of the Florida Supreme Court filed in SC18-1481 was illegally removed by the clerk of courts at the Florida Supreme Court, so that the clerk of courts could grant themselves the authority to dismiss SC18-1481.

94)     Even worse that the illegal acts taken to dismiss SC18-1481, even the reasons justified by the clerk of courts to dispose of  SC18-1481 were not accordance with the Florida Rules of Civil Procedure. The issues raised in support of this last claim is the subject of litigation in SC18-1909.

95)     The removal of pleadings from a docket is to exercise judgment on the pleading and such an exercise of judgment is the practicing of the law specifically made illegal under § 454.23, Fla. Stat. (2018).

## COUNT XIII
(§ 28.13, Fla. Stat. (2018), Amend. XIV, § 1, U.S. Const., 42 U.S.C. § 1983)

Unknown Clerks in the Florida Supreme Court, Florida's 4th District Court of Appeals, and the Broward county Courthouse, in their official capacity:

**13. § 28.13, Fla. Stat. (2018) states that "The clerk may not permit any attorney or other person to remove filed documents from the control or custody of the clerk without leave of the court" and would allowing the alterations in the dockets in all three courthouses as proved in the provided evidence invalidate § 28.13 Fla. Stat. (2018) as well as invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws", and shouldn't any state mandate issued as a result of this crime be repealed?**

96)     The facts stated in count XII of this complaint are re-alleged here in this

count.

97)    Where § 28.13, Fla. Stat. (2018) states, "The clerk may not permit any attorney or other person to remove filed documents from the control or custody of the clerk without leave of the court", the Plaintiff interprets this statement to include "other persons to also include the clerk of courts themselves.

98)    Additional proof of the removal of filed documents include:

1     https://youtu.be/FluiEXCbc_0 - Missing 2/28/18 Notice of Filing in CACE 16022826 (Video Taken on 3/15/18)

2     https://youtu.be/2VObCYK2l3o - 2/28/18 Notice of Filing Added Back To CACE 16022826 (Video Taken on 3/21/18)

3     https://youtu.be/YtKswjZ4EEM - Proof of the removal of 4D18-2315 (Video Taken on 8/14/18)

4     https://youtu.be/KGlG8laOn7s - Proof of the restoration of 4D18-2315 (Video Taken on 8/15/18)

5     https://youtu.be/rmMucg7ocn0 - Proof of an altered Order in 4D17-3335

99)    The Plaintiff filed the original motion for sanctions in 4D17-3335 on 2/23/18. The Petitioner uploaded the Motion for Sanctions after the clerk's office closed on that Friday. While the 2/23/18 Motion for Sanctions was filed on 2/23/18 and is labeled in the docket as having been filed on 2/23/18, the file date part of the renamed motion for sanctions is "02262018". This date name discrepancy occurs when a file is approved and placed onto the docket by the clerk of courts on a later date from the original filing. When a file is approved and placed on the docket, the file's name is programmatically renamed to conform with the file naming structure programmatically imposed by the Florida's 4th District Court of Appeals document management system, "eDCA".

100)   One minute and twenty seconds into the video, https://youtu.be/rmMucg7ocn0, shows a file name of "173335_1681_02262018 … pdf". The provided example shows how a file's date name can occur after the date on which it appears on the docket, however, no legitimate explanation can be provided for when, as is the case for the 2/27/18 order in 4D17-3335, a file's date naming structure name precedes the date that it shows up on the docket as seen 31 seconds into https://youtu.be/rmMucg7ocn0. This can only occur in circumstances of an illegal alterations of an order in 4D17-3335, therefore in this example, § 28.13, Fla. Stat. (2018) was also broken/invalidated in order to achieve the set mandate in 4F17-3335.

101)   The Plaintiff believes that to not enforce breaking of the law as described in § 28.13, Fla. Stat. (2018) and supported by the evidence included in this count would be an invalidation of the Plaintiff's rights guaranteed by the United States Constitution, and the Plaintiff requests an answer to the federal question provided in this count in order to resolve this matter.

<u>**COUNT XIV**</u>
(42 U.S.C. § 1983, U.S. Const. amend. XIV)

Judge Lazarus,
in his official capacity:

**14. An order was issued in CACE-16-022826 that denied the Petitioner/Appellant the right to apply for indigency statutes as guaranteed in § 27.52, Fla. Stat. (2018), and wouldn't allowing this order to stand invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws"?**

102)   The order issued in CACE-16-022826, see exhibit 'AQ' denied the Plaintiff to right to apply to be an indigent with the clerk of courts.

103)   The right to apply to be an indigent is a right guaranteed to everyone as

defined in § 27.52, Fla. Stat. (2018).

104) Therefore, the order in question, exhibit 'AQ', invalidated the Plaintiff's rights in the United States Constitution, specifically, Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws".

105) As a result of this invalidation of the Plaintiff's rights guaranteed by the United States Constitution, the Plaintiff brings the federal question in this count to this court for resolution in this matter.

### COUNT XV
(Art. V, §3(b)(1), Fla. Const., Amend. XIV, § 1, U.S. Const.)

County Clerk of Courts of the Florida Supreme Court,
in their official capacity:

**15. Art. V, §3(b)(1), Fla. Const. allows one to invoke the mandatory jurisdiction of the Florida Supreme Court, and wouldn't denying this right to the Petitioner/Appellant invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws"?**

106) Construing a provision of the state and/or federal constitutions can fall on a wide spectrum of judicial interpretations. In these cases, seeking the discretionary jurisdiction of the Florida Supreme Court is appropriate. Fla. R. Civ. P. 1.545 requires that an, "order or judgment which disposes of the action" be filed at the same time as the final disposition form. When examining Fla. R. Civ. P. 1.545 in the context of Art. I, § 2, Fla. Const. which states that, "All natural persons, female and male alike, are equal before the law" one is only permitted one question, "Was the final judgment order filed at the same time as the final

disposition form?" This question allows for only a binary response, yes or no. The written opinion in 4D17-3335 describes that these two forms were not filed at the same time. As a result, without question, when the facts in 4D17-3335 are applied, Art. I, § 2, Fla. Const. is invalidated.

107)   On 10/15/18 the Petitioner amended his Notice of Appeal, invoking the Mandatory Appellate Jurisdiction under Art. V, § 3(b)(1). This amended Notice of Appeal was placed on the docket, filed under the Mandatory Jurisdiction of the Florida Supreme Court, removed from the docket (see exhibit 'AN' taken on 10/22/18), and then added back to the docket (see exhibit 'AO' taken on 10/31/18).

108)   As described here in and supported by the evidence, in SC18-1481, the Plaintiff was barred from invoking the mandatory jurisdiction of the Florida Supreme Court.

109)   § 120.68, Fla. Stat. (2018) and Fla. R. Jud. Admin. 2.514 allowed the Plaintiff to file a Notice of Appeal up to and including 10/26/18.

110)   In compliance with § 120.68, Fla. Stat (2018), on 10/26/18 the Petitioner filed a Notice of Appeal in 4D17-3335, invoking the Mandatory Jurisdiction of the Florida Supreme Court. The title/heading for the 10/26/18 filing stated, "NOTICE OF APPEAL (STAT / CONST INVALID)" (see exhibit 'BA').

111)   On 10/30/18 a notice was sent to the Supreme Court stating that the Notice of Appeal filed on 10/26/18 in 4D17-3335 invoking the Mandatory

Jurisdiction of the Florida Supreme Court (see exhibit 'BA') was instead filed as

and sent to the Florida Supreme Court as a "Notice to Invoke Discretionary

Jurisdiction" (see exhibit 'BB').

112)   On 10/31/18 the Petitioner filed a Notice of Filing with the 4th DCA in

4D17-3335 (see exhibit 'BC') requesting that the timely filed 10/26/18 Notice of

Appeal originally filed as "Notice of Appeal (Stat / Const Invalid) but instead

treated as a "Notice of Discretionary Jurisdiction to Supreme Court" be filed as the

Petitioner originally filed the document.

113)   On 10/5/18 the Clerk of Courts for the Florida Supreme Court filed a

miscellaneous entry in 4D17-3335 notifying the Petitioner that SC18-1481 and

SC18-1752 already existed at the Florida Supreme Court in regards to 4D17-3335

and that no further pleadings could be filed seeking the discretionary review of the

Court (see exhibit 'BD').

114)   No authority has ever been granted to the Clerk of Courts to deny a

timely filed Notice of Appeal (see exhibit 'AP').

115)   The facts described within this count and supported by the evidence

cited in this count proves that the Plaintiff has been denied the right under the

Florida Constitution to invoke the Mandatory Jurisdiction of the Supreme Court of

Florida, and as a consequence, the Plaintiff believes that these actions invalidate

Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any

person within its jurisdiction the equal protection of the laws" and respectfully requests that this Court provided an answer to the certified question asked in this count.

### COUNT XVI
(28 U.S.C. § 2101(c), 42 U.S.C. § 1983, U.S. Const. amend. XIV)

Deputy Clerk of the Florida Supreme Court,
in their official capacity:

**16. When SC18-1481 was unlawfully dismissed and SC18-1752 was created in response (instead of correcting the error in SC18-1481), did these actions combine in a way to deny the Plaintiff the right to seek Certiorari from the United States Supreme Court as set in 28 U.S.C. § 2101(c) and Rule 13(2) in the United States Supreme Court?**

116)   28 U.S. Code § 2101(c) states,

"Any other appeal or any writ of certiorari intended to bring any judgment or decree in a civil action, suit or proceeding before the Supreme Court for review shall be taken or applied for within ninety days after the entry of such judgment or decree. A justice of the Supreme Court, for good cause shown, may extend the time for applying for a writ of certiorari for a period not exceeding sixty days."

117)   The Final Disposition in 4D17-3335 was set on 8/2/18.

118)   11/1/18 is exactly 90 days after the final disposition in 4D17-3335.

119)   On 10/19/18, SC18-1481 was dismissed.

120)   On 10/23/18 the Petitioner e-mailed the Clerk of the Supreme Court of Florida, John Tamasino informing him that the Deputy Clerk of Courts, without authority, practiced the law when he dismissed SC18-1481 and removed the 10/15/18 Notice of Appeal from the docket.

121)   Instead of correcting the crime in SC18-1481 (see Fla. Stat. § 454.23), on

10/23/18, John Tamasino, instead created a new case, SC18-1752, which was created minutes after the Plaintiff e-mailed the Clerk of the Supreme Court of Florida which contained only the Petitioner's 9/5/18 Notice of Appeal.

122)    In SC18-1752, on 10/23/18, 47 days after the 9/5/18 Notice of Appeal was filed, the case was immediately dismissed as untimely because, Notices of Appeal must be filed within 30 days of rendition of the order to be reviewed.

123)    A form order was issued on 10/23/18 informing the Petitioner that the dismissed case, SC18-1752 would be reinstated if timeliness could be established within 15 days of that order.

124)    On 10/26/18 the Plaintiff filed a Motion for Reinstatement in SC18-1752.

125)    The Petitioner was suspicious why SC18-1752 was dismissed as having a Notice of Appeal that was filed as untimely when the exact same Notice of Appeal in SC18-1481 was not dismissed as untimely. Moreover, without all of the supporting documents and orders that existed in the docket in SC18-1481, the Petitioner could see how the Clerk of Courts could justify without any explanation why SC18-1752 could be dismissed.

126)    On 11/8/18 the Petitioner's Motion for Reinstatement was denied without any explanation.

127)    In Rule 13 (2) of the Supreme Court of the United States it says that, "The Clerk will not file any petition for a writ of certiorari that is jurisdictionally out of time".

128)    Based on the selectively abridged transfer of the docket from SC18-1481, SC18-1752 would be seen by the clerk of the United States Supreme Court as being jurisdictionally out of time. Had the clerk of the Florida Supreme Court transferred all of the docket in SC18-1481 to SC18-1752 that supported the fact that the Notice of Appeal

was, timely filed (as the exact same Notice of Appeal was viewed in SC18-1481); the

Plaintiff would not have been jurisdictionally out of time, and the clerk of courts for the

Florida Supreme Court would not have taken actions to deny the Plaintiff the right to

seek certiorari with the United States Supreme Court.

129)   The Plaintiff believes that the actions described within this count amount to

federal obstruction of justice as defined in 18 U.S.C. § 1503.


### COUNT XVII
(42 U.S.C. § 1983, U.S. Const. amend. XIV)

Judge Lazarus,
in his official capacity:

**17. Art. I, §  21, Fla. Const. guarantees rights of a citizen to access the courts, but wouldn't denying the Petitioner/Appellant an appeal (because the record has been proven to have been altered several times during 4D17-3335) invalidate Amend. XIV, § 1, U.S. Const., which states, "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws"?**

130)   All facts in this complaint that reference an alteration of the record in

4D17-3335 and CACE-16022826 are re-alleged in this Count, additionally;

131)   In issue IV of the Motion To Correct The Record, referenced in the 4/25/18

opinion in 4D17-3335, the Plaintiff wrote:

> "The original complaint had all of the exhibits properly labeled. The updated complaint has newly added exhibits that are not labeled at all. Also, the motion apposing summary judgment, exhibit 'I', references exhibit 'F' as containing the itemization of mortgage payments and fees while the new complaint lists exhibit 'F' as an affidavit for attorney fees"

132)   After the Defendant's 1/9/18 Motion To Correct The Record and evidence

were examined by Florida's 4th District Court of Appeals, an order was issued to the

Defendant giving the Plaintiff an opportunity to explain why motions in the record did not match the initial complaint in the record.

133)    The Plaintiff's 3/12/18 response explained how the Appellant was confused when he wrote that the 5/10/17 motion that references the exhibit references the evidence in the initial complaint, but it instead references the evidence that was submitted in the 4/24/17 motion for Summary Judgment.

134)    After already proving that the record had been altered shortly after final judgement was decided, during the appeal, after the Motion to Correct the Record was docketed in 4D17-3335, the record on appeal was altered again when the Initial Complaint and the Motion Apposing Summary Judgment were swapped (and altered).

135)    Exhibit 'BE', the Plaintiff's Motion for Summary Judgement, confirms this cover-up of the cover-up.

136)    Page one of exhibit 'BE' no longer has 'v1' at the bottom right hand corner of the document indicating that it is the first version of the filing. Also, pages 2 -7 contain the '7462' as the last four digits of the unique filing ID.

137)    Exhibit 'E' (within exhibit 'BE') no longer has 'v1' at the bottom right hand corner of the document indicating that it is the first version of that document when it was filed.

138)    Exhibit 'E' (within exhibit 'BE') now contains '9989' next to 'v1' indicating that it was, originally, a separately filed document than the originally filed Motion For Summary Judgment.

139)    Exhibit 'F' (within exhibit 'BE') no longer has 'v1' at the bottom right hand corner of the document indicating that it is the first version of that document when it was filed.

140)   Exhibit 'F' (within exhibit 'BE') now contains '3302' next to 'v1' indicating that it was, originally, a separately filed document than the originally filed Motion For Summary Judgment.

141)   Exhibit 'G' (within exhibit 'BE') no longer has 'v1' at the bottom right hand corner of the document indicating that it is the first version of that document when it was filed.

142)   Exhibit 'G' (within exhibit 'BE') now contains '0646' next to 'v1' indicating that it was, originally, a separately filed document than the originally filed Motion For Summary Judgment.

143)   Exhibit 'H' (within exhibit 'BE') no longer has 'v1' at the bottom right hand corner of the document indicating that it is the first version of that document when it was filed.

144)   Exhibit 'H' (within exhibit 'BE') now contains '1622' next to 'v1' indicating that it was, originally, a separately filed document than the originally filed Motion For Summary Judgment.

145)   Regardless if a filed document no longer indicates that it is the first version of that file uploaded to the courthouse document management system, all of the exhibit's in exhibit 'BE' should have the same last four digits assigned to a document when it is uploaded into the courthouse document management system. Proving that the Motion For Summary Judgement was fundamentally altered, not just after the file was uploaded, but the combination of the pattern of only altering the first page of each exhibit as well as the repeated error of the mismatching of multiple unique file IDs combine to show that the exhibit labels on the first page were altered and the evidence attached to the Motion For Summary Judgment were also altered

Page 35 of 44

in response to the Petitioner's Motion To Correct The Record. It should be noted that evidence included in the Initial Complaint was also in the undeniably altered Motion for Summary Judgment.

## COUNT XVIII
(Amend. I, U.S. Const., 42 U.S.C. § 1983, U.S. Const. amend. XIV)

Unknown Clerk at the Broward County Clerk of Courts,
in their official capacity:

**18. The U.S. Const. Amend. I, U.S. Const. states, "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances". When the Petitioner's case was illegally dismissed in SC18-1481, four days after providing evidence in that case of a wrong of the state, as a consequence of petitioning the government for redress of a grievance, wasn't the Petitioner denied his rights guaranteed by the First Amendment of the United States Constitution, and in keeping with Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 281 (1977), should the Mandate set in 4D17-3335 as a consequence of the retaliatory act be repealed?**

146)   The facts in Count XII of this complaint are re-alleged herein.

147)   This wrongs raised in this Count allege an abridgement of the Plaintiff's First Amendment rights of the United States Constitution guaranteed to every citizen in the United States, and as such, the Plaintiff respectfully requests this Court to resolve the conflict that the Federal question raises in this Count by providing an answer to the federal question contained herein.

## COUNT XIX
(42 U.S.C. § 1983, U.S. Const. amend. XIV)

Judge Lazarus,
in his official capacity:

**19. Does the Plaintiff have a "Special Relationship" with the State of**

**Florida under the "State Created Danger Doctrine"?**

148)    During litigation for CACE 16022826 and 4D17-3335, the Defendant

proved that he was assaulted, that a senior officer with the Broward Sheriff's

Office had "signed off" on not arresting this individual, and that when the

Defendant proved that this person was not arrested during litigation for CACE

16022826, the evidence was altered during the appeal in 4D17-3335 to cover this

crime up.

149)    Originally, the Defendant discovered that the person that had attacked

the Defendant was never arrested. After this discovery was known, a fraudulent

arrest report was created (see exhibit 'BH'). The fraudulent arrest report can still be

proven to be an illegitimate arrest report. For example, the fraudulent arrest report

in question (see exhibit 'BH') states:

"walking on SW 2nd St. area I was flagged down…I walked over to the area"

Later, in the exact same narration:

"Guy called 911 to report the accident at which point we arrived".

150)    Before the alteration of the record during the appeal in 4D17-3335, the

original arrest report did not even contain an arrest time or location, which the

Defendant mentioned in a pleading that was later altered. Regardless of this later

alteration in the record, the Defendant was still able to provide unquestionable

examples of the fabricated police report.

151)   In the affirmative act of not arresting the person that assaulted the

Defendant (and then later covering up the non-arrest), the Broward Sheriff's Office

as well as the Fort Lauderdale Police Department, in its official capacity, sent a

message that those who attack (or commit any crime) against the Defendant will

not be arrested, prosecuted, and that they are free to commit those acts in the

future.

152)   It is stated in the Fort Lauderdale Police Department policy manual

under arrests 501.1, (B)(12)(b) (see exhibit 'BG'):

> "When a determination has been made by a Lieutenant or higher rank
> to void an arrest. In this case, the Lieutenant (or higher ranking
> officer) will sign a release order (Form Z-552) and will memorialize
> the reason(s) for voiding the arrest in a supplement to the original
> report."

153)   Any decision of a Lieutenant or higher falls under the classification of

Supervisory Liability as codified in § 42 U.S.C. 1983 case law, specifically, Rizzo

v. Goode, 423 U.S. 362 (1976); thereby correctly labeling these affirmative acts as

falling under the umbrella of state created dangers as well as actions taken by the

state in its official capacity.

154)   In addition to the fabricated arrest report (exhibit 'BH'), evidence of the

nonarrest of Turk and then the cover up of his non arrest can be seen by examining

the supplemental to main index ratio for florida.arrests.org and whogotarrested.org

(see https://www.clickz.com/dissecting-googlessupplemental-index/73136/), these

websites are, from Google's point of view, a healthy website. At a minimum, the entire website within one month's time should be indexed by Google. If it took Google any longer to index webpages, it would not be the world's leader in search engines as it currently is. Nine months after Terk was "allegedly" arrested, the pages for his arrest did not even make it into Google's main search index or even Google's supplemental index. A webpage showing up and backdated 9 months prior to its actual inclusion on a website is evidence of a cover-up.

155)   Evidence of the cover-up of Turk's non arrest can be viewed in this video:

> 1. https://youtu.be/9dNMa1IrIjk

156)   While the United States Constitution is widely held to be "a charter of negative liberties," which "tells the state to let people alone," there are exceptions that impose an affirmative liability, exceptions that were first codified in the Binding United Supreme Court case law in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989). The collective wisdom in that case has best been summed up best in best Bowers v. DeVito, 686 F.2d 616, 619 (7th Cir. 1982) where it was stated:

> "We do not want to pretend that the line between action and inaction, between inflicting and failing to prevent the infliction of harm, is clearer than it is. If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."

157)    When the State of Florida, in its official capacity, elected to not arrest a person who assaulted the Defendant and then later to cover up this abridgment of the Defendant's guaranteed constitutional rights, the state sent a message that anyone could get away with assaulting the Defendant thereby putting the Defendant in a worse position than if the state had taken no action at all. When the state puts someone in a greater danger than they were in before the state took affirmative actions, a "special relationship" between the State and the Defendant was formed where by an affirmative duty to undo the wrongs that have been exacted on the Defendant are imposed on the state, and the pleading standard for this affirmative duty is mere negligence. As it was set in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), when a "special relationship" is formed, there is no entitlement to governmental protection. In other words, as it was decided in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the government employees involved in this case cannot assert qualified immunity as an affirmative defense (or any kind of defense).

158)    Resolving this state/federal conflict would guide any future litigation that issues contained within this complaint may touch. As such the Plaintiff requests an answer to the federal question contained in this count.

## Request For An Emergency Preliminary Injunction

159)   The Plaintiff requests an Injunction against all cases that involve there federal questions in order to stay the proceedings in the state court while this court resolves all federal/state conflicts contained herein.

160)   In compliance with Rule 65 of the Federal Rules of Civil Procedure, the Plaintiff would like to schedule a preliminary injunction hearing at the earliest possible time.

161)   In the wake of the state and federal conflict that now exists, a certificate of title has already been issued to the Defendant, and with only 24 hours notice the Plaintiff could be evicted from his home. If an injunction is not granted while this Court decides on the Federal issues raised, greater harm would come to the Plaintiff because the Plaintiff could be made to be homeless.

162)   If it is determined that the Plaintiff's rights guaranteed by the United States Constitution have been abridged, it would constitute irreversible error if the Defendant is allowed to execute on the Certificate of Title.

163)   Granting an injunction will benefit the interest of the Defendant because neither party will have to incur additional expenses from simultaneous litigation. Furthermore, it has been reasoned that the granting of an injunction will benefit the public's interest by saving judicial resources and promote judicial economy.

164)   It has been held that the burden of having to simultaneously litigate cases in state court and on appeal, as well as the potential for inconsistent outcomes if the

state court ruled on any motions while a case is pending demonstrates irreparable harm favoring the granting of an injunction.

165)    The Counts in this Complaint prove a fundamental due process error, and in unfortunate circumstances such as this, it is customary to not require a bond while a determination of this Court is made.

## **Prayer For Relief**

166)   An emergency preliminary injunction to stay all proceedings in any and every case that is the result of (and including) CACE-16022826 until a determination of the Federal issues raised by the Plaintiff are decided by this Court.

167)   Count 1: An answer to the Federal Question contained in this Count.

168)   Count 2: An answer to the Federal Question contained in this Count.

169)   Count 3: An answer to the Federal Question contained in this Count.

170)   Count 4: An answer to the Federal Question contained in this Count.

171)   Count 5: An answer to the Federal Question contained in this Count.

172)   Count 6: An answer to the Federal Question contained in this Count.

173)   Count 7: An answer to the Federal Question contained in this Count.

174)   Count 8: An answer to the Federal Question contained in this Count.

175)   Count 9: An answer to the Federal Question contained in this Count.

176)   Count 10: An answer to the Federal Question contained in this Count.

177)   Count 11: An answer to the Federal Question contained in this Count.

178)   Count 12: An answer to the Federal Question contained in this Count.

179)   Count 13: An answer to the Federal Question contained in this Count.

180)   Count 14: An answer to the Federal Question contained in this Count.

181)   Count 15: An answer to the Federal Question contained in this Count.

182)   Count 16 An answer to the Federal Question contained in this Count.

183)   Count 17: An answer to the Federal Question contained in this Count.

184)   Count 18: An answer to the Federal Question contained in this Count.

185)   Count 19: An answer to the Federal Question contained in this Count.

## **Certificate of Service**

**I hereby certify** that a true and correct copy of the foregoing was served by email on

9/6/18 on all counsel or parties of record on the Service List below.

**Plaza Home Mortgage,**
**State of Florida:**
> **ARTAU, HON. EDWARD L.,**
> **LAZARUS, HON. JOEL T,**
> **Clerk of Courts in Broward County Courthouse,**
> **Clerk of Courts in Florida's 4ᵗʰ District Court of Appeals,**
> **Clerk of Courts in Florida's Supreme Court,**

_____
(Signature of Filer)

### **Service List**

Plaza Home Mortgage Attorney
Allison Thompson with Solomon Law Group, P.A.
1881 West Kennedy Boulevard, Suite D
Tampa, FL, 33606-1611

Florida State Attorney General's Office
1515 N Flagler Dr # 900,
West Palm Beach, FL 33401

Page 44 of 44

**FROM:**
Kenneth C. Guy
3109 Oakland Shores Dr., G108
Oakland Park, FL, 33309

**UNITED STATES POSTAL SERVICE.**    *Retail*

**US POSTAGE PAID**
**$10.90**
Origin: 33310
01/11/19
1130480246-15

**PRIORITY MAIL 1-Day ®**

2 Lb 2.00 Oz

EXPECTED DELIVERY DAY: 01/12/19   1005

C075

SHIP TO:
400 N MIAMI AVE
MIAMI FL 33128-1801

**USPS SIGNATURE TRACKING NUMBER**

9510 8147 0621 9011 2775 08

**TO:**
US District Court Clerk
400 N. Miami Ave.
Miami, FL, 33128

Ready